IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**
**April 22, 2024**
ASHLEY N. DEEM, DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**REBECCA WILLIAMSON,**
**Respondent Below, Petitioner**

**v.) No. 23-ICA-172**     (W. Va. Bd. of Registered Nurses, Case No. 63874)

**WEST VIRGINIA BOARD OF REGISTERED NURSES,**
**Complainant Below, Respondent**


**MEMORANDUM DECISION**

Petitioner Rebecca Williamson ("Nurse Williamson") appeals the March 28, 2023, final order of the West Virginia Board of Registered Nurses ("Board"), which found that she had engaged in professional misconduct and imposed disciplinary sanctions. The Board filed a summary response.[1] Nurse Williamson filed a reply. The issue on appeal is whether the Board erred in its finding of professional misconduct and its corresponding imposition of sanctions.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

As a preliminary matter, we note that Nurse Williamson's appellate brief openly states that she is not challenging the facts of this case, nor is she challenging the Board's authority to discipline nurses for professional misconduct. According to Nurse Williamson, she is only challenging the Board's finding that her actions constituted professional misconduct.

The undisputed facts of this case establish that, on June 8, 2020, Nurse Williamson was working as a senior labor and delivery nurse with Reynolds Memorial Hospital ("Hospital"). During her shift, a fellow nurse, Nurse Harris, requested Nurse Williamson's assistance with a patient on the labor and delivery unit ("Patient"). At that time, Patient was receiving an intravenous epidural infusion to induce labor and manage pain. As a known side effect, an epidural may cause numbness to a patient's lower extremities. According to Nurse Williamson, Patient was experiencing pain and had concerns that her

---

[1] Nurse Williamson is represented by Todd W. Reed, Esq., and the Board is represented by Joanne M. Vella, Esq.

lower extremities were completely numb; however, Nurse Williamson did not document these concerns in Patient's medical chart.

During her administrative hearing, Nurse Williamson indicated that around 9:00 a.m. Patient exhibited severe vaginal swelling. In response, Nurse Williamson applied ice to the affected area, changed Patient's position, and used a "peanut ball" to open her pelvis. Nurse Williamson notified Patient's treating OB-GYN, Dr. Hamilton, of Patient's status and the actions taken. Dr. Hamilton, who was present at the Hospital, told Nurse Williamson to continue taking those types of actions to promote the progress of labor.

Nurse Harris performed a vaginal examination of Patient at 11:06 a.m. A second vaginal examination was performed by Nurse Williamson at 11:48 a.m. at which time Patient had been in labor for approximately two hours. According to Nurse Williamson, her examination revealed that Patient was fully dilated and that her vaginal swelling had reduced but was still present. Nurse Williamson testified that at that time, Patient's numbness prevented her from wiggling her toes or feeling the necessary pressure to begin the pushing necessary for the baby's delivery, and that as a result, the baby was travelling back up the birth canal instead of down.

At this time, without consulting Dr. Hamilton or the attending anesthesiologist, Nurse Williamson turned off the epidural. At some point between the two vaginal examinations, Dr. Hamilton was advised of Patient's status. Then, at 11:57 a.m., Dr. Hamilton was informed by Nurse Williamson that the epidural had been stopped. According to Nurse Williamson, Dr. Hamilton was not alarmed by her actions but instructed her to restart the epidural. However, the notes in Patient's medical record indicate that Dr. Williamson told the Anesthesia Department that Patient's epidural had fallen out. The Anesthesia Department was contacted, and the epidural infusion was restarted approximately fifteen minutes after it was discontinued; however, Patient's chart indicates that the epidural had been disconnected for an unknown period of time prior to notifying the anesthesia provider.[2] Further, the restarting of the epidural is noted in Patient's chart, but Nurse Williamson's actions prior to that are not. In her testimony, Nurse Williamson stated she had been too busy to chart her other actions and had trusted Nurse Harris to chart the information for her.

A complaint was made to Nurse Williamson's supervisor by the Hospital's Anesthesia Department. The supervisor then filed an incident report with the Director of Nursing, Ms. Denny ("Director Denny"). Director Denny investigated the matter and met with Nurse Williamson who refused to respond to the internal complaint and obtained legal counsel. On June 15, 2020, Director Denny filed a complaint with the Board, alleging, among other things, that Nurse Williamson had engaged in professional misconduct by

---

[2] The baby was later successfully delivered by Caesarean section.

2

practicing beyond the scope of professional nursing when she discontinued the epidural without a doctor's order.

On June 18, 2020, the Board served the complaint upon Nurse Williamson. In her written response to the complaint, Nurse Williamson noted that Patient was not her assigned patient, but that she was experiencing vaginal swelling and a loss of feeling in her lower extremities. Nurse Williamson also listed the actions she took to assist with the swelling, and stated, "I had a major safety concern for this patient[,] so I stopped the continuous epidural infusion . . . by turning off the epidural [because] it was in the best interest of the patient's safety and well[-]being to try to help expedite a vaginal delivery because of her severe vaginal swelling."

Ms. Douglas, a registered nurse, conducted the investigation on behalf of the Board ("Investigator Douglas"). Investigator Douglas memorialized her findings in a written investigative report dated January 5, 2021 ("Report"). According to the Report, Investigator Douglas spoke with Nurse Williamson who stated that under Hospital policy, she had authority to act without a doctor's order because Patient's condition raised the safety concerns necessary for her to unilaterally act. Investigator Douglas also spoke with Director Denny who believed Nurse Williamson had acted outside the scope of her profession by discontinuing the epidural without any documented safety concerns or prior doctor consultation, and that there was not an "emergent situation" which prevented Nurse Williamson from contacting Dr. Hamilton or the anesthesiologist prior to turning off the epidural.

The Report concluded that there was evidence that Nurse Williamson had practiced beyond the scope of professional nursing and that she had not documented a safety concern in the medical chart or consulted a doctor prior to discontinuing the epidural. On November 9, 2022, an administrative hearing was held before the Board's hearing examiner at which time Nurse Williamson, Director Denny, and Investigator Douglas each testified.[3]

Nurse Williamson testified that pursuant to Hospital Policy 12023, *Epidural for Labor Analgesia* ("Policy"), she had the authority to discontinue the epidural if she had a safety concern. Nurse Williamson maintained that section two, subsection (B) of the Policy, which outlines post epidural placement procedure, granted her the authority to stop the epidural without a doctor's order. Specifically, Nurse Williamson pointed to the language of this subsection which states: "The RN may stop the continuous infusion i[f] there is a safety concern or the woman has given birth," and argued that her observations

---

[3] The hearing examiner's decision as adopted by the Board also references that a Nurse Springer testified. However, the decision makes no findings as to this witness's testimony. Nevertheless, the absence of such findings does not affect our ruling in this appeal.

regarding Patient's numbness and position of the baby in the birth canal constituted an actionable "safety concern."

Nurse Williamson also relied upon the Position Statement published by the Association of Women's Health, Obstetric and Neonatal Nurses (AWHONN) titled, *Role of the Registered Nurse in the Care of the Pregnant Woman Receiving Analgesia and Anesthesia by Catheter Techniques* ("Position Statement"). This Position Statement, which is listed as a Policy reference, includes the following language: "RNs in communication with the maternity care and anesthesia provider may . . . [s]top the continuous infusion if there is a safety concern or the woman has given birth." Association of Women's Health, Obstetric and Neonatal Nurses, *Role of the Registered Nurse in the Care of the Pregnant Woman Receiving Analgesia and Anesthesia by Catheter Techniques*, 49 J. of Obstetric, Gynecologic, & Neonatal Nursing 328 (2020). According to Nurse Williamson, AWHONN is a national specialty organization that gives guidance to labor and delivery nurses and its publications are considered to set the standard of care for obstetrics nurses. Because neither the Policy nor the Position Statement expressly required a doctor's authorization prior to discontinuing an epidural, Nurse Williamson opined that her conduct was justified.

When Nurse Williamson was asked why she did not document her safety concerns in Patient's chart, she replied that she had her own patients to care for, that she was being pulled in many directions that day with other people asking for her help, and that she thought Nurse Harris "was going to document appropriately." She further stated, "If anything, that is what I did wrong." Nurse Williamson also claimed that she did note her act of shutting off the epidural in EPIC, a separate system used by the Hospital. She stated that this system is used for making patient notes outside of the patient's chart. She indicated that while a Hospital patient has access to his or her chart through another Hospital system, EPIC is not accessible by patients.

Director Denny testified that she had been licensed as a registered nurse for thirty-five years with a diverse background working in different areas of medical practice, but that she had not previously worked as an obstetrics nurse. Director Denny testified that she was familiar with the Hospital's Policy and acknowledged that under section two, subsection (B), a registered nurse may stop an epidural if a safety concern exists. However, Director Denny further testified that those safety concerns were not without limitation, but rather, must correlate to one of the nine signs of an adverse reaction listed under section two, subsection (A) of the Policy, which addresses epidural placement.[4] Because none of

---

[4] This portion of the Policy instructs registered nurses to observe the following adverse reactions: (1) maternal tachycardia or bradycardia; (2) hypertension; (3) dizziness; (4) tinnitus; (5) peri oral numbness; (6) taste in mouth; (7) loss of consciousness; (8) seizures; or (9) cardiovascular compromise. It is undisputed that none of those factors were exhibited by Patient on June 8, 2020, when Nurse Williamson stopped the epidural.

those nine factors were present, Director Denny maintained there were no safety concerns for Patient, as defined by Policy, that should have raised an alarm with Nurse Williamson. Director Denny further testified that while section two, subsection (B) did not expressly state that a doctor's order was required for a nurse to discontinue an epidural, as a general rule, no nurse has authority to act on a patient concern without a doctor's order and all concerns must be reported to the attending provider. Director Denny acknowledged she was aware of AWHONN but had not reviewed the Position Statement relied upon by Nurse Williamson at any time prior to filing the Board complaint against Nurse Williamson or her testimony at the administrative hearing. Investigator Douglas briefly testified as to her investigation and subsequent findings outlined in her Report.

On March 3, 2023, the hearing examiner filed her written recommendation with the Board, which included recommended findings of fact and conclusions of law. Among them, the hearing examiner found that the testimony of Investigator Douglas and Director Denny was credible, consistent, and supported by the record. Nurse Williamson's testimony was determined to be self-serving and not credible because it was inconsistent with the prior statements she had made during the investigation.

The hearing examiner found that the evidence established that Nurse Williamson stopped Patient's epidural without a doctor's order and that her stated concerns did not create a critical or emergency situation. Nurse Williamson had practiced beyond the scope of her professional responsibilities as a registered nurse and her actions were a risk to Patient's safety. Likewise, the evidence also supported a finding that Nurse Williamson engaged in professional misconduct when she failed to report her concerns to Dr. Hamilton who would have determined how to proceed with Patient's care. Instead, Nurse Williamson acted unilaterally and without authority. Further, Nurse Williamson had failed to properly chart her actions and concerns. While she testified that she noted her actions in the EPIC system, Nurse Williamson did not present any of those records to corroborate her testimony.

Ultimately, the hearing examiner concluded that the Board had proven that Nurse Williamson had violated West Virginia Code § 30-7-11(a)(6) (2018), which states that the Board may discipline a licensed registered nurse upon proof that he or she "[i]s guilty of conduct derogatory to the morals or standing of the profession of registered nursing[.]" Also, the Board had proven its allegation that Nurse Williamson had violated the various provisions of West Virginia Code of State Rules § 19-3-12.1 (2022). Namely, it was determined that Nurse Williamson had "failed to adhere to established standards in the practice setting to safeguard patient care[.]" W. Va. Code R. § 19-3-12.1.b; "practiced or offered to practice beyond the scope permitted by law or accepted and performed professional responsibilities that the licensee knows or has reason to know that he or she is not licensed, qualified, or competent to perform[.]" W. Va. Code R. § 19-3-12.1.e;

5

"engaged in dishonorable, unethical or unprofessional conduct of a character likely to deceive, defraud or harm the public or any member of the public; thus, not exercising good professional character[.]" W. Va. Code R. § 19-3-12.1.o; "falsified patient records, intentionally charted incorrectly[.]" W. Va. Code R. § 19-3-12.1.u; and "improperly, incompletely, or illegibly documented the delivery of nursing care, including but not limited to treatment or medication[.]" W. Va. Code R. § 19-3-12.1.v.

By final order entered on March 28, 2023, the Board adopted the hearing examiner's findings of fact and conclusions of law, verbatim. The Board also disciplined Nurse Williamson by placing her nursing license on reprimand status for a period of six months and directed her to pay a fine and administrative cost of $500. It is from this final order that Nurse Williamson now appeals.

Our review of this matter is governed by the State Administrative Procedures Act, and it provides:

> The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision, or order are:
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the agency;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

W. Va. Code § 29A-5-4(g) (2021); *accord* W. Va. Code R. § 19-5-12 (2023) ("[a]n appeal from any final order . . . shall comply with the provisions of W. Va. Code § 30-1-9[.]"); W. Va. Code § 30-1-9 (2023) (stating judicial review shall be conducted in accordance with W. Va. Code §§ 29A-5-1 to -5).

On appeal, Nurse Williamson advances two primary arguments.[5] First, she argues that the Board's finding that she lacked the authority to unilaterally discontinue the epidural was based on its erroneous interpretation and understanding of the Hospital's Policy and

_____

[5] In her brief, Nurse Williamson raises three assignments of error. However, because Nurse Williamson's first two assignments of error are based on the overarching argument that she had the authority to stop the epidural without a doctor's order, they will be addressed together.

6

AWHONN's Position Statement. She maintains that the Board's interpretation was clearly wrong because it failed to find her testimony on the subject, as a veteran obstetrics nurse, more credible than that of Director Denny and Investigator Douglas who, although experienced nurses, had no experience in obstetrics and, thus, the Board could not rely on their testimony to determine whether a "safety concern" existed. We are unpersuaded by this argument.

Regarding credibility determinations, our state's highest court has recognized that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) (citation omitted); *Vogt v. Macy's, Inc.*, No. 22-ICA-162, 2023 WL 4027501, at *6 (W. Va. Ct. App. June 15, 2023) (memorandum decision) (declining to disturb credibility determinations on appeal). In this case, the Board's hearing examiner, as the trier of fact, was present during the hearing and in the best position to observe the witnesses and to determine the weight and credibility to be given to the evidence presented. Further, the Board adopted those findings. Although Nurse Williamson urges this Court to disturb the Board's findings as to credibility, we decline to revisit those determinations.

Also on this issue, Nurse Williamson contends that her interpretation of the Policy and Position Statement was the correct interpretation, and that the Board erred by relying upon Director Denny's interpretation of the Policy to conclude that she committed professional misconduct by acting without authority. According to Nurse Williamson, the Board was required to find that section two, subsection (B) of the Policy controls this case because it is specific to post epidural placement, and that because neither the Policy nor Position Statement define the term "safety concern," her interpretation of the term was reasonable, and her actions were authorized. She maintains that the Board was clearly wrong by adopting Director Denny's interpretation that the term was defined by the nine factors listed under section two, subsection (A) because that subsection deals with initial epidural placement and none of those factors were referenced or included in subsection (B). We find this argument unavailing.

Contrary to Nurse Williamson's argument, nothing in the Board's final order expressly adopted Director Denny's Policy interpretation, but rather, the order found that the issues relied upon by Nurse Williamson were not actionable safety concerns. Further, Nurse Williamson concedes that the Board has full and complete authority regarding nurse discipline, which includes its role as trier of fact in disciplinary actions.

To adopt Nurse Williamson's position would necessarily require this Court to reexamine the evidence; however, it is well established that on appeal, "[a]n appellate court does not reweigh the evidence[.]" *State v. Thompson*, 220 W. Va. 246, 254, 647 S.E.2d 526, 534 (2007); *Coles v. Century Aluminum of W. Va.*, No. 23-ICA-81, 2023 WL

7

7202966, at *2 (W. Va. Ct. App. Nov. 1, 2023) (memorandum decision) (noting that an appellate court will not reweigh the evidence presented below on appeal). Further, "an agency's determination of matters within its area of expertise is entitled to substantial weight." *Princeton Cmty. Hosp. v. State Health Plan.*, 174 W. Va. 558, 564, 328 S.E.2d 164, 171 (1985). We are also mindful that "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996); *see also* Syl. Pt. 1, in part, *In Interest of Tiffany Marie S*., 196 W. Va. 223, 470 S.E.2d 177 (1996) (on appeal, a court may not overturn a finding simply because it would have decided case differently). Here, the determination of whether a "safety concern" existed on June 8, 2020, was clearly within the Board's area of expertise and its determination was rationally based upon the uncontroverted facts below. As such, we find no error in the Board's ruling.

In her second and final assignment of error, Nurse Williamson argues that the Board erred by finding that she failed to properly document her termination of the epidural. On this issue, she maintains that while she did not document her actions in Patient's primary chart, she alternatively documented her actions in the EPIC system; and therefore, this finding must be overturned. We disagree and find no error in the Board's determination. Fatal to Nurse Williamson's argument is the fact that she failed, as the Board found, to produce any of the EPIC records during the administrative hearing to support her contention. Further, she does not dispute that she failed to produce those records below. As such, Nurse Williamson is not entitled to relief on this issue.

Accordingly, we find no error and affirm the Board's March 28, 2023, final order.

Affirmed.

**ISSUED:** April 22, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear

8