647 S.E.2d 526

STATE of West Virginia, Plaintiff
Below, Appellee

v.

Adonis Ray THOMPSON, Defendant
Below, Appellant.

No. 33206.

Supreme Court of Appeals of
West Virginia.

Submitted: April 4, 2007.

Decided: May 11, 2007.

E. Taylor George, Esq., Assistant Public Defender, Gregory L. Ayers, Esq., Deputy Public Defender, Kanawha County Public Defender Office, Charleston, for the Appellant.

Darrell V. McGraw, Jr., Esq., Attorney General, Robert D. Goldberg, Esq., Assistant Attorney General, Charleston, for the Appellee.

PER CURIAM.

This case is before this Court upon the appeal of Adonis Ray Thompson from his conviction in the Circuit Court of Kanawha County, West Virginia, of the felony offense of child neglect resulting in death. According to the State, appellant Thompson unreasonably failed to exercise a minimum degree of care toward his 2 year-old son, Luke Alexander Thompson, who died from hyperthermia upon being left in an infant car seat in the appellant's car over four hours on a day where outside temperatures reached in excess of 80 degrees Fahrenheit. The appellant contends that he collapsed into sleep in his residence due to physical exhaustion and that his resulting failure to retrieve Luke from the car rendered his son's death purely accidental. Following trial by jury and conviction, the Circuit Court entered an order on March 30, 2006, sentencing the appellant to an indeterminate term of three to fifteen years in the penitentiary.

This Court has before it the petition for appeal, the entire record of the proceedings below and the briefs and argument of counsel. The appellant sets forth assignments of error alleging that the Circuit Court improperly instructed the jury and that the evidence was insufficient to support the conviction. Upon careful examination, however, and upon the applicable standards of review, this Court finds no merit in those assignments. Therefore, the appellant's conviction and sentence are affirmed.

I.

Factual Background

Appellant Thompson and Courtney Elaine Ferrell, the natural parents of Luke Alexander Thompson, lived with their son in a trailer home in Blount, West Virginia, located in the Campbells Creek area of Kanawha County. At 3:00 a.m. on May 28, 2004, the family evacuated the trailer because of flooding brought about by heavy rains. The appellant had been awake the entire night and had worked a double-shift the day before as a laborer for a mobile home moving company. His work that day had involved assisting in transferring a mobile home to the top of a hill for a customer.

After leaving their home, the appellant and Ferrell drove to the residence of the appellant's father and stepmother, also in Blount, and advised them and their neighbors of the flooding in the vicinity. Luke, age 2, who had been running a fever, was strapped in an infant car seat in the appellant's 1989 Ford Probe. Thereafter, the appellant, Ferrell and Luke drove to various places until the waters receded.

The family returned to the trailer between 10:00 a.m. and 10:30 a.m., on May 28, at which time Ferrell left in a separate vehicle to purchase cigarettes and check on the appellant's father and stepmother. The appellant's Ford Probe containing Luke was parked approximately five feet from the front of the trailer. The windows of the car were closed, with the exception of the driver's side window which was open no more than one and one-half inches. According to the appellant, he intended to leave Luke in the car for five minutes while he went in the trailer to change into dry clothes. The appellant maintains that he made the decision to leave Luke unattended in the car because it was still raining, Luke had been running a fever and the electricity in the trailer had gone off. The appellant further contends that, while changing clothes, he collapsed into sleep unintentionally by reason of physical exhaustion and did not wake up until he heard the restoration of electric power in the trailer at

3:00 p.m.[1] At that point, Luke had been left unattended in the car over four hours.

Upon waking up, appellant Thompson ran to the car and carried Luke next door to the home of Janet Elswick. While her husband called 911, Elswick made sure Luke's throat was clear and administered CPR. Upon arrival, the paramedics observed that Luke was not breathing, did not have a pulse and appeared to be deceased. He was "hot to touch," so they removed his clothes and ran the air conditioner in the ambulance. Later testimony revealed that at 3:00 p.m. that day the outside temperature in the Charleston, West Virginia, area was 84 degrees Fahrenheit. The paramedics attempted to revive Luke and transported him to Women and Children's Hospital in Charleston where he was pronounced dead. According to hospital records, his core temperature at 4:25 p.m. that day was close to 107 degrees Fahrenheit. The Medical Examiner determined the cause of death to be hyperthermia: abnormally high body temperature due, in this case, to environmental conditions.

## II.

### Procedural Background

In June 2005, an indictment was returned by a Kanawha County grand jury charging appellant Thompson with child neglect resulting in death pursuant to *W.Va.Code*, 61–8D–4a (1997). That statute provides in part:

If any parent, guardian or custodian shall neglect a child under his or her care, custody or control and by such neglect cause the death of said child, then such parent, guardian or custodian shall be guilty of a felony and, upon conviction thereof, shall be fined not less than one thousand dollars nor more than five thousand dollars or committed to the custody of the Division of Corrections for not less than three nor more than fifteen years, or both such fine and imprisonment.

The appellant was provided with court appointed counsel, and, in January 2006, a trial was conducted. The appellant, testifying before the jury, maintained that his decision to leave Luke in the car for five minutes was reasonable inasmuch as it was still raining, Luke had been running a fever and the electricity in the trailer had gone off. Furthermore, the appellant insisted that his collapse into sleep was the unintended result of working a double shift the day before and of the events following his family's evacuation in the early morning hours. The appellant thus contended that exhaustion rendered him unable to exercise the proper degree of care toward his son and that Luke's death was purely accidental.

The State argued to the jury that, under the totality of the circumstances, Luke's death was foreseeable since the appellant: (1) was aware that he was exhausted, (2) knew he was the only adult present to take responsibility for Luke and could have carried him into the trailer and (3) entered the trailer to wait for Ferrell rather than simply to change clothes. In addition, pursuant to Rule 404(b) of the West Virginia Rules of Evidence, the Circuit Court permitted the State to elicit testimony that, on past occasions, the appellant and Ferrell used the infant car seat as a "babysitter" for Luke.[2] In

---

**1.** The appellant indicated in a statement given to Officer Greg Young of the Kanawha County Sheriff's Office following Luke's death, that, while in the trailer, he was also waiting for Ferrell's return prior to collapsing into sleep. The statement, in the form of both an audio-tape and a transcribed document signed by the appellant, was admitted into evidence at trial without objection. During closing argument, the State suggested that waiting on Ferrell's return was inconsistent with the appellant's assertion that he planned to be in the trailer only five minutes.

In any event, the appellant indicated that he was overtaken by sleep while bent over tying his shoes after putting on dry clothes and that, when the power was restored to the trailer, he woke up in the same position. As the appellant testified

at trial: "Well, at the point I sat down to tie my shoes is the last thing I remember until the power came back on. I woke up, I was bent—I was still bent over with my chest touching my knees where I had been tying my shoes."

During the appellant's sentencing hearing conducted on March 30, 2006, the Circuit Court stated that it seemed incredulous that the appellant would fall asleep bent over to tie his shoes with his chest touching his knees and, after several hours, wake up in the same position.

**2.** No assignment of error concerning the Rule 404(b) evidence has been raised before this Court. The Rule provides in part:

*Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible

that regard, Janet Elswick told the jury that, about one month before Luke's death, the appellant and Ferrell left Luke in the car "from 20 to 30 minutes." Moreover, Elswick testified that, the week Luke died, she received an early-morning telephone call from the appellant's employer inquiring about his absence from work that day. In response, Elswick entered the unlocked trailer, found Luke strapped in the car seat on a chair near the front door and found the appellant and Ferrell sleeping in the bedroom at the back of the trailer.[3]

On January 24, 2006, the jury found appellant Thompson guilty of child neglect resulting in death. A sentencing hearing was conducted on March 30, 2006, and an order was entered that day sentencing the appellant to an indeterminate term of three to fifteen years in the penitentiary. In October 2006, this Court granted the appellant's petition for appeal.

### III.

### Standards of Review

■■■ As stated above, appellant Thompson alleges instructional error and that the evidence was insufficient to support the conviction. With regard to instructions to the jury, this Court noted in syllabus point 1 of *State v. Hinkle*, 200 W.Va. 280, 489 S.E.2d 257 (1996), that: "As a general rule, the refusal to give a requested jury instruction is reviewed for an abuse of discretion. By contrast, the question of whether a jury was properly instructed is a question of law, and the review is *de novo*." Syl. pt. 1, *State v. Dinger*, 218 W.Va. 225, 624 S.E.2d 572 (2005); syl. pt. 1, *State v. Brooks*, 214 W.Va. 562, 591 S.E.2d 120 (2003); syl. pt. 3, *State v. Phillips*, 205 W.Va. 673, 520 S.E.2d 670

(1999). More specifically, syllabus point 4 of *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995), holds:

A trial court's instructions to the jury must be a correct statement of the law and supported by the evidence. Jury instructions are reviewed by determining whether the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not misled by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy. A trial court, therefore, has broad discretion in formulating its charge to the jury, so long as the charge accurately reflects the law. Deference is given to a trial court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only for an abuse of discretion.

Syl., *State v. James*, 211 W.Va. 132, 563 S.E.2d 797 (2002); syl. pt. 1, *State v. Boggess*, 204 W.Va. 267, 512 S.E.2d 189 (1998); syl. pt. 3, *State v. Lease*, 196 W.Va. 318, 472 S.E.2d 59 (1996).

■■■ As to claims of insufficiency of the evidence, this Court observed in syllabus point 1 of *Guthrie, supra*, as follows:

The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found

to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident [.]

**3.** As Elswick testified in part:

So, I went over there, and I knocked on the door. Nobody answered. Then I knocked again, and the door came open. And there was a chair beside the door with a blanket over

it, and I thought maybe it was [the appellant], maybe he fell asleep. But then Lukie pulls the blanket over his head, and he's strapped in the car seat with a plastic thing up around his neck like this, where he couldn't get out of the car seat, sitting in a chair, covered up.

The plastic device, of the appellant's own design, was apparently added to the infant car seat on occasion to prevent Luke from unbuckling the straps. The record is unclear whether the device was in place on the day in question.

the essential elements of the crime proved beyond a reasonable doubt.

Syl. pt. 1, *State v. Mann,* 205 W.Va. 303, 518 S.E.2d 60 (1999); syl. pt. 1, *State v. Browning,* 199 W.Va. 417, 485 S.E.2d 1 (1997); syl. pt. 4, *State v. Broughton,* 196 W.Va. 281, 470 S.E.2d 413 (1996). *See also,* syl. pt. 2, *State v. LaRock,* 196 W.Va. 294, 470 S.E.2d 613 (1996).[4]

With these principles in mind, we turn to the specific issues raised by the appellant.

## IV.

### Discussion

■ First, emphasizing his testimony that he collapsed into sleep in the trailer, the appellant contends that his right to due process of law under the federal and State constitutions was violated by the Circuit Court's failure to instruct the jury upon the defense of unconsciousness or automatism.[5] In that regard, the appellant relies upon *State v. Hinkle, supra,* syllabus point 3 of which holds: "An instruction on the defense of unconsciousness is required when there is reasonable evidence that the defendant was unconscious at the time of the commission of the crime." According to the appellant, such

an instruction would have told the jury that, in order to support a conviction of child neglect resulting in death, he must be found to have committed a "voluntary act" in furtherance of the offense.

■ As confirmed during argument before this Court, however, appellant Thompson requested no such instruction before the Circuit Court. He asserts, nevertheless, that the failure to give the instruction constitutes plain error.[6]

In *Hinkle,* the defendant was convicted of involuntary manslaughter resulting from a head-on collision between the automobile he was driving and another vehicle. At trial, the defendant submitted evidence to the effect that he could have lost consciousness immediately prior to the collision because of a brain disorder, not diagnosed until after the accident, which precluded any volitional component required of the offense. Supportive of that defense, often referred to as unconsciousness or automatism, was the fact that there was no evidence that the defendant was aware of the possibility of a blackout. 200 W.Va. at 288 n. 28, 489 S.E.2d at 265 n. 28.[7]

---

4. Syllabus point 2 of *LaRock* states:

 When a criminal defendant undertakes a sufficiency challenge, all the evidence, direct and circumstantial, must be viewed from the prosecutor's coign of vantage, and the viewer must accept all reasonable inferences from it that are consistent with the verdict. This rule requires the trial court judge to resolve all evidentiary conflicts and credibility questions in the prosecution's favor; moreover, as among competing inferences of which two or more are plausible, the judge must choose the inference that best fits the prosecution's theory of guilt.

 Syl. pt. 3, *State v. Williams,* 209 W.Va. 25, 543 S.E.2d 306 (2000). *See,* Vol. 2, F.D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 12-4(B). at 12–72, 73 (4th ed.—2000) (discussing *Guthrie* and *LaRock*).

5. U.S. Const. amend. V and amend. XIV provide that no person shall be deprived of life, liberty or property without due process of law. W.Va. Const. art. III, § 10, provides that no person shall be deprived of life, liberty or property without due process of law.

6. Rule 30 of the West Virginia Rules of Criminal Procedure states in part that "the court or any

appellate court may, in the interest of justice, notice plain error in the giving or refusal to give an instruction, whether or not it has been made the subject of objection." *See also,* W.Va. R.Crim. P. 52(b) recognizing the plain error doctrine.

 As noted in syllabus point 4 of *State v. England,* 180 W.Va. 342, 376 S.E.2d 548 (1988), however, the doctrine is not without limitations:

 The plain error doctrine contained in Rule 30 and Rule 52(b) of the West Virginia Rules of Criminal Procedure is identical. It enables this Court to take notice of error, including instructional error occurring during the proceedings, even though such error was not brought to the attention of the trial court. However, the doctrine is to be used sparingly and only in those circumstances where substantial rights are affected, or the truth-finding process is substantially impaired, or a miscarriage of justice would otherwise result.

 Syl. pt. 6, *State v. Mayo,* 191 W.Va. 79, 443 S.E.2d 236 (1994); syl. pt. 6, *State v. Nicholas,* 182 W.Va. 199, 387 S.E.2d 104 (1989).

7. Discussing the defendant's previously undiagnosed brain disorder, this Court, in *Hinkle,* noted: "There is virtually no evidence in the record to indicate that the defendant knew (or reason-

The trial court, in *Hinkle*, refused the defendant's proposed instruction which described the alleged brain disorder in the context of insanity. Instead, the trial court instructed the jury on the defense of unconsciousness or automatism. Nevertheless, this Court, determining the instruction to be inadequate, awarded a new trial. As stated in the *Hinkle* opinion: "The jury should have been told that, in light of the evidence of the defendant's brain disorder and apparent blackout, he could not be convicted unless the State proved beyond a reasonable doubt that his act was voluntary and that he acted in reckless disregard of the safety of others." 200 W.Va. at 288, 489 S.E.2d at 265.[8]

Unlike the defendant in *Hinkle*, appellant Thompson requested no instruction in the context of insanity or otherwise concerning the defense of unconsciousness or automatism. Rather, although the appellant maintained, as did the defendant in *Hinkle*, that his collapse precluded the voluntary aspect of the offense, the appellant, unlike the defendant in *Hinkle*, largely focused at trial upon the *reasonableness* of his decision, under the circumstances, to leave Luke in the car for five minutes. Moreover, unlike *Hinkle* where the defendant was unaware of the possibility of a blackout, appellant Thompson was, no doubt, aware of his exhaustion and the fact that he was the only adult present to take responsibility for his son. Thus, in contrast to the unexpected manifestation of an undiagnosed brain disorder, the appellant

contributed to the circumstances in which Luke's death was foreseeable.

Another distinction between *Hinkle* and the case to be determined is the appellant's status in relation to his son. Pursuant to *W.Va.Code,* 61–8D–4a(a) (1997), the offense of child neglect resulting in death is to be prosecuted against the child's "parent, guardian or custodian." In like fashion, the term "neglect" is defined in *W.Va.Code,* 61–8D–1(6) (1988), as the "unreasonable failure by a parent, guardian or any person voluntarily accepting a supervisory role towards a minor child to exercise a minimum degree of care to assure said minor child's physical safety or health." Consequently, in view of the appellant's duty or status as a parent, an analysis of the evidence of his "failure" to assure Luke's physical safety and health, *a fortiori,* warrants a consideration of the totality of the circumstances as to whether the Circuit Court's failure to instruct the jury on unconsciousness or automatism constituted plain error.[9]

From what has been said, this Court declines to extend the principles of *Hinkle* to this situation. Accordingly, we find no plain error in the Circuit Court's failure to *sua sponte* instruct the jury.

▪ Appellant Thompson next contends that he was denied due process of law by the Circuit Court's refusal to give his instruction which would have informed the jury that the term "neglect," as charged in the indictment, requires a finding of gross deviation beyond

---

ably should have known) of the serious nature of his brain disorder or that he knew (or reasonably should have known) that it would impair his ability to drive an automobile so as to endanger human life." 200 W.Va. at 288–89, 489 S.E.2d at 265–66.

8. The defendant, in *Hinkle*, was indicted for the offense of involuntary manslaughter while driving a motor vehicle in an unlawful manner in violation of *W.Va.Code,* 61–2–5 (1923). In syllabus point 1 of *State v. Vollmer,* 163 W.Va. 711, 259 S.E.2d 837 (1979), this Court held: "An involuntary manslaughter charge arising from a death resulting from the operation of a motor vehicle requires something more than an act of ordinary negligence or the violation of a motor vehicle statute to sustain the conviction." Utilizing Virginia case law, *involuntary manslaughter in the operation of a motor vehicle* is defined in 21A M.J., *Words and Phrases* (Matthew Bender &

Co.—2000), as an "accidental killing which, although unintended, is the proximate result of negligence so gross, wanton and culpable as to show a reckless disregard of human life."

9. The above statutory definition of "neglect" was included in the instructions given to the jury in this case. As stated in *Jones v. United States,* 308 F.2d 307 (D.C.Cir.1962):

There are at least four situations in which the failure to act may constitute breach of a legal duty. One can be held criminally liable; first, where a statute imposes a duty to care for another; second, where one stands in a certain status relationship to another; third, where one has assumed a contractual duty to care for another; and fourth, where one has voluntarily assumed the care of another and so secluded the helpless person as to prevent others from rendering aid.

the standard of care and a finding of significantly more than ordinary negligence. In making that assertion, the appellant relies upon *State v. DeBerry*, 185 W.Va. 512, 408 S.E.2d 91, *cert. denied*, 502 U.S. 984, 112 S.Ct. 592, 116 L.Ed.2d 616 (1991). In *DeBerry*, this Court indicated that the term "neglect," statutorily defined as the unreasonable failure to exercise a minimum degree of care to assure the minor child's physical safety or health, was comparable to criminal negligence which included the "gross deviation" and "significantly more than ordinary negligence" standards. 185 W.Va. at 515, 408 S.E.2d at 94.

*DeBerry*, however, involved an appeal by the State from the dismissal of an indictment charging the defendant with child neglect resulting in serious bodily injury under *W.Va.Code*, 61–8D–4(b) (1988), a separate statute from *W.Va.Code*, 61–8D–4a(a) (1997), concerning child neglect resulting in death. The sole issue in *DeBerry* was constitutional in nature, and as this Court held in syllabus point 3:

> The term "neglect," as defined by *W.Va. Code*, 61–8D–1(6) (1988), is not unconstitutionally vague in violation of due process principles contained in *U.S. Const.* amend. XIV, § 1, and *W.Va. Const.* art. III, § 10. Therefore, *W.Va.Code*, 61–8D–4(b) (1988), is not unconstitutionally vague in violation of due process principles contained in *U.S. Const.* amend. XIV, § 1, and *W.Va. Const.* art. III, § 10, because such statute's use of the term "neglect" gives a person of ordinary intelligence fair notice that his or her contemplated conduct is prohibited, and it also provides adequate standards for adjudication.

308 F.2d at 310.

**10.** One of the instructions given to the jury stated that the State was required to prove beyond a reasonable doubt that the appellant: (1) neglected Luke, (2) by unreasonably failing to exercise a minimum degree of care to assure his physical health or safety, (3) in that he left the minor child alone in a car unattended for a period in excess of four hours and (4) "that said neglect" caused Luke's death. The State concedes that the instruction was defective because it implied that the act of leaving a child in a car in excess of four hours constitutes neglect as a matter of law. As the State emphasizes in its brief, however, "[t]he appellant did not object to this instruction at trial." Moreover, no post-trial motion was filed raising the issue.

An analysis of the complete charge given by the Circuit Court does not indicate that the jury was misled by the instruction. The fact that

Thus, *DeBerry* does not stand for the proposition that the appellant was entitled to an instruction elaborating upon the definition of the term "neglect." Instead, it suggests that the statutory definition is unambiguous. In the case now before us, the Circuit Court incorporated the language of the offense, *W.Va.Code*, 61–8D–4a (1997), in its instructions to the jury and included the statutory definition of "neglect" set forth in *W.Va. Code*, 61–8D–1(6) (1988). Moreover, the Circuit Court told the jury that the word "unreasonable" found within the definition of "neglect" meant "unwise, senseless or not rational."

Rather than alleging that the instructions thus given were erroneous, the appellant insists that the instruction he proposed, based upon *DeBerry*, would have provided further guidance to the jury by refining the definition of "neglect." In that manner, the appellant sought further elaboration upon a word which was already defined by statute. We believe, however, that, upon the whole, a balanced charge was given to the jury and that the Circuit Court's refusal to allow the proposed instruction was "protected by the parameters of sound discretion." *Parker v. Knowlton Construction Company*, 158 W.Va. 314, 329, 210 S.E.2d 918, 927 (1975).[10] This assignment of error, therefore, is without merit.

Luke died from being left in the car for an excessive period of time was never disputed at trial, while, in conjunction therewith, the jury was told that the State was required to prove that the appellant neglected him. The statutory definition of "neglect," namely, the unreasonable failure to exercise a minimum degree of care to assure the child's safety or health, was read to the jury three times prior to the giving of the instruction in question, and the term "unreasonable" was also defined. Moreover, the jury was told that the appellant was a competent witness whose evidence was entitled to the credit and weight it deserved. Finally, immediately prior to dismissal to begin deliberations, the Circuit Court told the jury to "apply all of those instructions together as a whole."

Consequently, although the appellant raised this issue upon appeal, this Court does not find the defect sufficient to warrant a new trial.

In his final assignment of error, appellant Thompson contends that his conviction should be set aside because the evidence at trial was insufficient to support the verdict. In considering that assignment, this Court must review all of the evidence in the light most favorable to the prosecution. As this Court made clear in *State v. Guthrie, supra,* an appellant in a criminal case challenging the sufficiency of the evidence "takes on a heavy burden," and a jury verdict should be set aside "only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." 194 W.Va. at 669–70, 461 S.E.2d at 175–76. *See,* 5 Am. Jur.2d, *Appellate Review* § 662 (1995) (An appellate court does not reweigh the evidence presented in the court below.).

In *Kelly v. Commonwealth,* 42 Va.App. 347, 592 S.E.2d 353 (2004), the Court of Appeals of Virginia found the evidence sufficient to support the defendant's convictions of involuntary manslaughter and felony child neglect, where the defendant's 21 month-old daughter, Frances, died from hyperthermia after being left strapped in a car seat in a van in excess of seven hours. The van was parked at the defendant's residence. The defendant, who had instructed his teenage son to take Frances into the house, was in and out of the residence throughout the day. Neighbors testified that, on prior occasions, they had seen the defendant's children locked in his vehicles on hot or warm days and that they so alerted the defendant. In affirming the convictions, the Court, in *Kelly,* stated:

> Kelly was solely responsible for Frances, a twenty-one-month-old child. He strapped her into her car seat in the family van, thus placing her in a position in which she was rendered helpless. This position became lethal when Kelly, through his dereliction, left Frances in the vehicle and only quickly and casually instructed other children or a sixteen-year-old boy to get all the children out of the van and into the house. Kelly departed immediately without ensuring that his instructions were obeyed. Specifically, he abandoned Frances without ensuring that she was removed from her confinement in the car seat and

lodged safely in the house. Thereafter, over the course of several hours, he made no further provisions for or inquiry about Frances.

42 Va.App at 356–58, 592 S.E.2d at 357–58. *See,* Robert E. Shepherd, Jr., *Family and Juvenile Law,* 39 Univ. of Richmond L.Rev. 241, 276 (2004). Similarly, the Supreme Court of Virginia found the evidence sufficient to support two criminal neglect convictions in *Barrett v. Commonwealth,* 268 Va. 170, 597 S.E.2d 104 (2004), where the defendant's 10 month-old son, Joshua, drowned in a bathtub while the child and his 2 year-old sister were at home without supervision. The defendant was present in the home but had gone to sleep on the couch after a night of drinking beer. Considering all of the circumstances, rather than simply the defendant's "act of falling asleep," the Court, in *Barrett,* stated: "Barrett sent Patricia to her room even though it was well before nap time, gave Joshua a bottle and placed him on the floor beside the couch, and then, still intoxicated as well as tired, proceeded to go to sleep on the couch, knowing she was the only one left in the apartment to supervise the children." 268 Va. at 185, 597 S.E.2d at 112.

Here, the community of circumstances surrounding Luke's death was properly submitted for deliberation by the jury. Viewing the evidence in the light most favorable to the State requires, as in *Barrett,* more than focusing upon appellant Thompson's collapse into sleep. Rather, the evidence was there for the jury to conclude that the appellant contributed to the circumstances which led, inexorably, directly to Luke's death from hyperthermia. The death was foreseeable. The appellant was aware of his own exhaustion from being up the entire night, and he knew that he was the only adult present to take responsibility for Luke. He could have carried Luke and the car seat into the trailer. Moreover, according to the State, the appellant entered the trailer to wait for Ferrell's return, rather than simply to change clothes. The testimony and exhibits admitted at trial, viewed from the State's perspective, is, thus, irreconcilable with the appellant's assertion

that the evidence was insufficient to support the verdict.

## V.

### Conclusion

Upon all of the above, this Court finds no merit in the assignments of error raised by the appellant. Accordingly, the appellant's conviction and March 30, 2006, sentencing order are affirmed.

Affirmed