IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**ROBERT OWENS and MELODY MERVA,**
**Plaintiffs Below, Petitioners**

**v.) No. 24-ICA-290**        (Cir. Ct. Berkeley Cnty. Case No. CC-02-2024-C-230)

**COURTNEY AXLINE and DOMINIQUE JOHNSON,**
**Defendants Below, Respondents**

**FILED**
**April 29, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

### MEMORANDUM DECISION

Petitioners Robert Owens and Melody Merva appeal the May 27, 2024, order from the Circuit Court of Berkeley County, which dismissed their wrongful occupation petition against respondents Courtney Axline and Dominique Johnson and granted Ms. Axline's counterclaim for damages. Ms. Axline filed a response.[1] Mr. Johnson did not participate in this appeal. Petitioners filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On April 12, 2024, petitioners filed a wrongful occupation petition against respondents in the Magistrate Court of Berkeley County. The petition alleged that respondents were "[twelve] days late on rent and suspect drug dealing." Ms. Axline filed an answer asserting a breach of the implied warranty of habitability as an affirmative defense and made a related counterclaim for damages. On April 30, 2024, Ms. Axline removed the case to circuit court. Thereafter, a bench trial was held before the circuit court on May 16, 2024, where the court heard the testimony of Mr. Owens and Ms. Axline. According to the order on appeal, the following facts were established at trial.

On August 10, 2023, respondents entered into a one-year residential lease agreement with Mr. Owens for a three-bedroom duplex. According to the lease agreement, rent was set at $1,300 per month and required a $1,800 security deposit which represented one month's rent and a $500 pet deposit. The circuit court noted that during the bench trial, Mr. Owens' testimony confirmed there was a $1,800 security deposit, but he claimed that Ms.

---

[1] Petitioners are represented by Michael T. Logsdon II, Esq. Ms. Axline is represented by Carolyn J. Beyer, Esq., and Katrina D. Ackerman, Esq.

Axline did not pay it, and that she had forged that amount onto the lease agreement; however, the court found Mr. Owens offered no evidence to support his assertion.

Under the lease, rent was due on the first of each month and the lease imposed a $5 per day penalty for each day it was late. Based upon their pay schedules, respondents generally paid their rent on the tenth of each month along with the full late payment penalty and petitioners regularly accepted the same.

According to Ms. Axline, issues first arose with the rental unit on December 26, 2023, when the septic system began backing up in the rental unit's bathroom with wastewater containing untreated human sewage bubbling out of the toilet and filling the bathtub. Ms. Axline testified that she immediately contacted Mr. Owens about the problem.

Mr. Owens indicated that due to his own hospitalization, he was not notified of the problem until January 12, 2024. He stated that he attempted to address the issue in multiple ways. First, he had the septic tank pumped but it did not resolve the issue. Next, he used a drain snake to clear any potential clogs in the system; however, the issues persisted. After further investigation, a hole was discovered in one of the septic pipes running from the rental unit to the tank. Mr. Owens stated that he patched the hole, but it did not resolve the issue. Ultimately, the rental unit could not use water because there was no functional sewer in January of 2024.

Ms. Axline testified that Mr. Owens unsuccessfully attempted to repair the septic system. As a result, he left the septic tank exposed in the backyard, where it seeped fecal matter, created a foul odor, and attracted flies. When it rained, the tank overflowed, wads of toilet paper could be seen around the tank, and the ground around the tank remained soggy. As a consequence, Ms. Axline indicated that her young children could not safely play in the backyard. The circuit court determined that Ms. Axline had produced two photographs of the exposed septic tank showing it in both dry and wet conditions, and that those photographs were consistent with her testimony.

When it became clear that the septic system would have to be replaced, Mr. Owens told Ms. Axline that he could not afford to do so, and that the work could not be done anyway because the ground was too wet. He told Ms. Axline that if she did not like it, she could leave. Moreover, Mr. Owens instructed Ms. Axline to limit the household's water usage. He told her not to use the dishwasher or the washing machine. Mr. Owens also instructed Ms. Axline that only one person in the four-person household could take a bath or shower per day. Additionally, only one sink full of dishes could be washed per day, by hand. Ms. Axline testified that their eldest daughter had to stay with her grandmother so the child could bathe regularly. The rest of the household traveled to the homes of other family members to shower.

2

Ms. Axline indicated that she was forced to go to a laundromat to wash the household's clothing. She incurred expenses for gas to travel back and forth to the laundromat and to go to other family members' homes to shower. Ms. Axline began purchasing bottled drinking water for the family beginning in January of 2024. She estimated that her total out-of-pocket expenses for gas, laundromat fees, and bottled water were $750.

On January 24, 2024, an anonymous complaint was made to the Berkeley County Health Department regarding the defective septic system. The Health Department sent Mr. Owens a letter dated January 26, 2024, requiring him to remedy the issue. Mr. Owens applied for a permit to install the septic system, and a permit was issued on February 28, 2024. On May 15, 2024, the Health Department indicated that it was still waiting for the installation to be completed, and that a permit had been issued but that the septic system could not be installed because it was "wet season."

Mr. Owens testified that the issue with the septic system was caused by Ms. Axline's household, claiming that the septic cleanout contained feminine hygiene products, soap, and grease. Ms. Axline disputed the allegation, testifying that no feminine hygiene products were flushed down the toilet, the household used a normal amount of soap, and that any grease was disposed of in a separate container. Mr. Owens also sought reimbursement of $253.50 for the electric bill he paid during a two-week overlap in transferring the electric bill into Ms. Axline's name.

During the months of January, February, and March of 2024, respondents paid their rent in full even though the problems caused by the defective septic system continued. In April, Ms. Axline decided to withhold the rent and hold it in escrow until the problem was fixed. She believed that she had given petitioners reasonable time to address the issue. Ms. Axline hand-delivered written notice of rent withholding to Mr. Owens along with $300 as a showing of good faith that she intended to pay the rent in full when the problem was remedied. It is undisputed that Mr. Owens crumpled the notice upon its delivery.

In the order presently on appeal, the circuit court first addressed Ms. Axline's counterclaim for damages based upon the alleged breach of the warranty of habitability as established by West Virginia Code § 37-6-30 (1978) and the seminal case of *Teller v. McCoy*, 162 W. Va. 367, 253 S.E.2d 114 (1978). Considering the relevant authority, the court determined Mr. Owens was required to deliver and maintain the rental premises in a fit and habitable condition, and that Ms. Axline's duty to pay rent was dependent upon Mr. Owens' fulfillment of the implied warranty of habitability.

The circuit court determined that Ms. Axline had proven her counterclaim for damages. The court specifically found her testimony to be more credible than Mr. Owens, and that Ms. Axline's testimony established that Mr. Owens breached the implied warranty of habitability because the defective septic system was unsafe, unsanitary, and rendered

3

the dwelling uninhabitable. The circuit court found the measure of damages for a breach of this warranty was governed by Syllabus Point 5 of *Teller*, which states:

> When the warranty of habitability is breached, the tenant's damages are measured by the difference between the fair market value of the premises if they had been so warranted and the fair rental value of the premises as they were during the occupancy by the tenant in the unsafe and unsanitary condition. However, the tenant may additionally recover damages for annoyance and inconvenience proven to have resulted from the breach.

*Id.* at 367, 253 S.E.2d at 114, syl. pt. 5.

Based on these principles, the circuit court awarded Ms. Axline the full amount of rent she paid in January, February, and March of 2024, totaling $3,900. Likewise, Ms. Axline was permitted to retain the escrowed rent for April and May of 2024. The court also awarded Ms. Axline the return of her full $1,800 security deposit, $750 for the out-of-pocket expenses she incurred because of the defective septic system, and $2,000 as damages for annoyance and inconvenience. However, the circuit court also credited Mr. Owens $126.75 as one-half of the electric bill reimbursement he requested. Ultimately, Ms. Axline was awarded $8,323.25 in damages. The order also dismissed petitioners' wrongful occupation petition, finding that respondents were not late on the payment of rent because their obligation to pay was contingent on a fit and habitable premises.[2] This appeal followed.

On appeal, we apply the following standard of review:

> In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Pub. Citizen, Inc. v. First Nat'l Bank in Fairmont*, 198 W. Va. 329, 480 S.E.2d 538 (1996).

On appeal, petitioners raise three assignments of error. Upon review, we find it appropriate to consolidate and restate those arguments for the purposes of this appeal. *See*

---

[2] The circuit court's order also dismissed petitioners' claim that respondents were dealing drugs out of the rental unit, finding there was insufficient evidence to support the claim. This finding is not expressly challenged on appeal.

4

*Tudor's Biscuit World of Am. v. Critchley*, 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012) (per curiam) (stating the general proposition that related assignments of error may be consolidated for ruling); *Jacquelyn F. v. Andrea R.*, No. 16-0585, 2017 WL 2608425, at *1 n.2 (W. Va. June 16, 2017) (memorandum decision) (restating assignments of error where they involve clearly related issues). Restated, petitioners challenge the circuit court's determination that they breached the implied warranty of habitability, its award of damages to Ms. Axline, and its finding that respondents did not breach the parties' lease agreement. We will discuss each issue in turn.

First, petitioners assert that the circuit court erred in its determination that they breached the implied warranty of habitability. On this issue, petitioners contend that the circuit court misinterpreted the evidence to conclude that respondents withheld their April of 2024 rent due to the issues with the septic tank, and that it should have determined that the rent was withheld because it was not paid by April 1st as required by the lease agreement. Petitioners further argue that there was no evidence to support the circuit court's finding that the septic system issues were substantial and material or that the issues rendered the rental unit unfit and uninhabitable. Rather, petitioners contend that they placed reasonable limitations on respondents' water use, and that the evidence illustrates that Mr. Owens promptly responded and repaired the septic system within a reasonable amount of time. We are unpersuaded by petitioners' overall contention on this issue.

Aside from reciting West Virginia Code § 37-6-30 and *Teller*, petitioners offer no substantive legal authority or evidence with the appellate record to support their assertion. Instead, they merely offer an alternative application of the law to the facts of this case and ask the Court to adopt those interpretations. Substantively, petitioners do not agree with the circuit court and desire for this Court to reweigh the evidence and reach a more favorable conclusion. We decline to do so. It is well established that on appeal, "[a]n appellate court does not reweigh the evidence[.]" *State v. Thompson*, 220 W. Va. 246, 254, 647 S.E.2d 526, 534 (2007) (per curiam); *Coles v. Century Aluminum of W. Va.*, No. 23-ICA-81, 2023 WL 7202966, at *2 (W. Va. Ct. App. Nov. 1, 2023) (memorandum decision) (noting that an appellate court will not reweigh the evidence presented below on appeal). Further, the circuit court, as trier of fact, was in the best position to evaluate credibility and consider and give weight to the testimony and evidence presented. *See Vogt v. Macy's, Inc.*, No. 22-ICA-162, 2023 WL 4027501, at *6 (W. Va. Ct. App. June 15, 2023) (memorandum decision) ("[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court . . . will not, second guess such determinations") (quoting *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997)). After review of the record, we cannot conclude that the circuit court committed error or abused its discretion when it determined that petitioners had breached the implied warranty of habitability.

Next, petitioners argue that the circuit court erred when it awarded Ms. Axline damages. Petitioners contend that the circuit court failed to limit damages to those

reasonably related to the breach. According to petitioners, rather than awarding respondents the full amount of rent paid in January, February, and March of 2024, the circuit court should have determined a date of breach and offset the rent accordingly. In petitioners' view, because Mr. Owens promptly responded to the septic tank issues, a breach did not occur until after the Health Department issued a permit to modify the septic system on February 28, 2024, and, thus, a reasonable measure of damages would have been beginning in mid-March or April of 2024. On a similar basis, petitioners also claim that the circuit court's award of $2,000 for annoyance and inconvenience is unreasonable. We find no merit in this argument.

In this case, the circuit court's award of damages was based upon its application of *Teller* to evidence presented at trial. On this issue, petitioners do not articulate any argument which challenges the circuit court's application of *Teller*. Instead, petitioners reassert their contention that there was no breach of the implied warranty of habitability but also alternatively claim that to the extent a breach occurred, it did not occur until February 28, 2024. Notably akin to petitioners' first assignment of error, they make this proposition without pointing the Court to legal authority in support of their position. Thus, to reach petitioners' conclusion would require our reweighing of the evidence; however, for the reasons previously stated, we decline to do so. Following our review of the record, we find no basis to disturb the circuit court on this issue.

Petitioners also assert that the circuit court erred by returning the full security deposit without petitioners first having the opportunity to inspect the apartment for damages. In support of their position, petitioners rely upon West Virginia Code §§ 37-6A-2 to -6, which governs residential rental security deposits. They contend that until the article is complied with, respondents are not entitled to return of their security deposit. We are not persuaded by this argument.

First, nothing within article 6A prohibits a court from returning a security deposit to a tenant, and there is no language which expressly states a landlord inspection is a prerequisite to the return of any security deposit. Instead, West Virginia Code § 37-6A-2(a) (2011) states that "[u]pon termination of the tenancy and within the applicable notice period, any security deposit held by the landlord, minus any deductions for damages or other charges, shall be delivered to the tenant[.]" Further, petitioners offer no legal precedent interpreting the provisions of article 6A to effectuate the meaning they argue on appeal. More significantly, upon the case's removal to circuit court, petitioners never amended their complaint to allege that respondents damaged the premises.[3] Therefore, petitioners have failed to establish error.

---

[3] Indeed, contrary to the requirement of Rule 10(c)(7) of the Rules of Appellate Procedure that the argument section of a petitioner's brief must include citations to the record "that pinpoint when and how the issues in the assignments of error were presented

In their final assignment of error, petitioners aver that the circuit court erred by concluding that respondents did not breach the lease agreement. As previously established, the only grounds raised by petitioners were respondents' failure to pay rent and suspected drug activity. Petitioners do not challenge the circuit court's ruling with respect to its claim of suspected drug activity. Instead, petitioners argue that the evidence shows that respondents violated the lease by failing to pay rent.[4] We disagree and find no error by the circuit court.

As the circuit court aptly observed, respondents' duty to pay rent was dependent upon petitioners' compliance with the implied warranty of habitability. *Teller* at 367, 253 S.E.2d at 114, syl. pt. 2. We previously concluded that the circuit court did not err in its determination that petitioners violated the implied warranty of habitability. Moreover, as we previously noted, the circuit court was in the best position to weigh and consider the evidence presented. Thus, we find no error in the circuit court's ultimate determination that petitioners' breach of the implied warranty of habitability absolved respondents' obligation to pay rent.

Accordingly, we find no error and affirm the circuit court's May 27, 2024, order.

Affirmed.

**ISSUED:** April 29, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White

---

to the lower tribunal," petitioners fail to identify if this argument was raised before the circuit court.

[4] Petitioners also contend that respondents violated at least four other lease provisions. However, these provisions were never provided to the circuit court for consideration. As such, we reject this argument to the extent it raises new issues for the first time on appeal. *See Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009) (citations and quotations omitted) ("Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered."); *PITA, LLC v. Segal*, 249 W. Va. 26, 40, 894 S.E.2d 379, 393 (Ct. App. 2023) (noting that as a general rule, an appellate court will not consider an issue raised for the first time on appeal).

7