# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**
**February 27, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**THE SHUMARD FOUNDATION, INC.,**
**Third-Party Defendant Below, Petitioner**

**v.) No. 23-ICA-290**   (Cir. Ct. of Wood Cnty. Case No. CC-54-2022-C-21)

**UMB BANK, N.A., in its capacity as Successor Master**
**Trustee under that certain Master Trust Indenture dated**
**as of August 31, 2007, between Ohio Valley University, Inc.,**
**and United Bank, Inc.,**
**Plaintiff Below, Respondent**

**and**

**B. RILEY FINANCIAL, INC.,**
**Receiver Below, Respondent**

**and**

**OHIO VALLEY UNIVERSITY, INC.,**
**Defendant Below, Respondent**

## MEMORANDUM DECISION

Petitioner The Shumard Foundation, Inc., ("Shumard") appeals the Order Determining Lien Priority entered by the Circuit Court of Wood County on June 5, 2023.[1] Respondent UMB Bank, N.A. ("UMB") filed a response.[2] Shumard filed a reply.

---

[1] This Court previously dismissed this appeal on jurisdictional grounds by order entered on March 22, 2024. That order was subsequently reversed by the Supreme Court of Appeals of West Virginia in a decision dated September 10, 2025, which also remanded this matter to this Court for a ruling on the merits. *Shumard Foundation, Inc., v. UMB Bank, N.A.*, No. 24-225, 2025 WL 2614061 (W. Va. Sept. 10, 2025) (memorandum decision). This Court entered an order on October 17, 2025, returning the case to our active docket.

[2] Shumard is represented by James W. Lane, Jr., Esq., Eric M. Johnson, Esq., and L. Elizabeth King, Esq. UMB is represented by Shawn P. George, Esq., Jennie O. Ferretti, Esq., and Charles E. Nelson, Esq. Neither Respondent B. Riley Financial, Inc., nor Respondent Ohio Valley University, Inc., participated in this appeal.

1

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024).[3] After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

This case involves a priority dispute between two competing creditors with perfected security interests under the Uniform Commercial Code ("UCC"). The material facts are not in dispute.

On January 1, 2007, Parkersburg Powell Limited Partnership ("PPLP") executed a Purchase Money Note in the original principal amount of $750,000 (the "PPLP Note") payable to Ohio Valley University, Inc. ("OVU"). Pertinent to this appeal, the PPLP Note states:

> [PPLP] . . . (the "Maker") promises to pay Ohio Valley University, a West Virginia corporation having an address at 1 Campus Drive, Vienna, West Virginia 26105 (the "Holder"), or at such other place as may be designated in writing by the Holder, the principal sum of SEVEN HUNDRED FIFTY THOUSAND DOLLARS ($750,000), with interest thereon to accrue annually, non-compounded, from the date hereof, at the rate of 6%. The principal sum, together with all accrued and unpaid interest, shall be due and payable on January 1, 2022, unless paid sooner in accordance with the terms hereof.

To secure payment, PPLP executed a Deed of Trust which was duly recorded and granted a lien in favor of OVU in an apartment complex known as the Powell Apartments (the "PPLP Property"). Relevant here, the Deed of Trust sets forth:

> [T]o secure the payment of said Loan in the amount of SEVEN HUNDRED FIFTY THOUSAND DOLLARS ($750,000.00), lawful money of the United States of America, to be paid with interest and periodic charges (said obligations, interest, periodic charges and all other sums which may or shall become due under the Loan Agreement, the Note executed by [PPLP] in connection therewith being hereinafter referred to as the "[PPLP] Obligation"), [PPLP] has mortgaged, given, granted, bargained, sold, alienated, enfeoffed, conveyed, confirmed and assigned, and by these presents does mortgage, give, grant, bargain, sell, alien, enfeoff, convey, confirm and assign unto Trustee for

---

[3] As UMB and Shumard each state in their briefs, the June 5, 2023, Order Determining Lien Priority completely resolved the case below as to Shumard. Because the order completely resolves the case as to one party, we find that it approximates a final order in its nature and effect. *See* Syl. Pt. 1, in part, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995).

the benefit of [OVU] forever all right, title and interest of [PPLP] now owned, or hereafter acquired, in and to the . . . Property. . . . PROVIDED ALWAYS, and these presents are upon this express condition, that if [PPLP] or its successors or assigns shall well and truly pay or cause to be paid unto [OVU], its successor or assigns, the [PPLP] Obligation, and otherwise perform [PPLP's] Obligation under this Deed of Trust and the Note, then the estate hereby granted shall cease, determine and be void.

On August 30, 2007, OVU entered into the Master Indenture, pursuant to which OVU granted UMB (or "Master Trustee") a security interest in, among other things, the PPLP Note. The Master Indenture states that OVU pledged, assigned, conveyed, transferred, and granted "a first priority security interest in, general lien upon, and the right of set-off against . . . [a]ll of [OVU's] Gross Receipts, Accounts, Bank Accounts, General Intangibles and all Related Rights" (the "Master Trustee Lien"). The Master Indenture defines the term "Gross Receipts" in part, as all of OVU's right "to receive [monies] whether in the form of accounts receivable, contract rights, chattel paper, instruments, general intangibles, or other rights and the proceeds thereof[.]"

The Master Trustee Lien was initially perfected by a UCC-1 financing statement filed on September 4, 2007, and perfected a second time when the Master Trustee filed a UCC-1 on June 13, 2019. The Master Trustee Lien secures OVU's repayment of nearly $16,000,000 in bond proceeds owed to UMB as the Master Trustee.

In September of 2019, OVU defaulted under its obligation to UMB. Thereafter, UMB and OVU entered into a Forbearance Agreement, which provided OVU with a forbearance period through July 15, 2021.

On April 22, 2021, OVU and Shumard entered into a Collateral Assignment and Pledge Agreement (the "Shumard Agreement") wherein OVU gave Shumard an assignment to the PPLP Note. As described in the Shumard Agreement, Shumard loaned OVU $500,000 (the "Shumard Loan"), which was to be repaid in one year. The Shumard Agreement included language creating a security interest ("Shumard Lien"); specifically:

Security Interest. [OVU] hereby grants a security interest in and assigns, transfers and pledges to [Shumard], all rights, title, interests and benefits of [OVU's] in and to, all benefits of [OVU] under, and all monies due or to become due to [OVU] under or in connection with the Assigned Note, the [Deed of Trust] and the Sinito Agreement and under any and all additions, amendments, supplements or other modifications thereof; now or hereafter in effect [. . .] as collateral security for [. . .] any and all loans, advances, indebtedness and other obligations of [OVU] owed to [Shumard] with respect to the [Shumard Loan], the [Shumard] Note, and the other [Shumard] Loan Documents[.]

3

The Shumard Lien was perfected by a UCC-1 financing statement filed on May 6, 2021. As further security for the Shumard Lien, OVU assigned the PPLP Deed of Trust to Shumard.

On January 5, 2022, OVU ceased operations and defaulted under the Forbearance Agreement. On February 17, 2022, OVU filed for Chapter 7 bankruptcy in the U.S. Bankruptcy Court for the Northern District of West Virginia. Thereafter, on March 4, 2022, the bankruptcy court entered an agreed order granting UMB relief from the automatic stay to pursue its rights and remedies regarding certain collateral, which included the PPLP Note and its related Deed of Trust. In the interim, UMB filed the underlying receivership action against OVU in circuit court on February 14, 2022.

For context, paragraph two of the March 4, 2022, bankruptcy order states: "The automatic stay imposed by 11 U.S.C. § 362(a) is terminated such that the [Master] Trustee may proceed to exercise its rights and remedies under applicable non-bankruptcy law with respect to the following property . . . (c) The personal property defined as the 'Campus Personal Property[.]'" At paragraph three, the bankruptcy court further clarifies:

> For the avoidance of doubt, the Campus Personal Property includes, without limitation, that certain [PPLP] Note in the original principal amount of $750,000.00, dated January 1, 2007, due and payable to Ohio Valley University, Inc., on January 1, 2022, and executed by Parkersburg Powell Limited Partnership, as amended by that certain Amended and Restated [PPLP] Note in the original principal amount of $750,000.00, dated December 1, 2007, due and payable to Ohio Valley University, Inc., on March 31, 2038, and any documents related thereto.

Thereafter, with the consent of the bankruptcy trustee and UMB, the circuit court entered an order on March 8, 2022, appointing a receiver to administer said properties. As a result, the PPLP Note proceeds were paid to the receiver.

After entry of the receivership order, PPLP refinanced the PPLP Note with a third-party lender. PPLP was aware of the competing claims of Shumard and UMB against the PPLP Note and Deed of Trust. Before PPLP paid the PPLP Note, it sought assurances from Shumard, UMB, and the receiver that all claims and liens related to PPLP or its real property securing the PPLP Note under the Deed of Trust would be released upon PPLP's satisfaction of the note.

In order to allow PPLP to pay the PPLP Note and also to preserve Shumard's and UMB's competing claims, PPLP, Shumard, UMB, and the receiver entered into a stipulation agreement regarding the PPLP Note proceeds ("Stipulation"). The Stipulation provides that the receiver would hold in escrow, and would not spend or distribute, $590,000 (the "Disputed Proceeds") derived from the payoff of the refinanced PPLP Note

4

pending the resolution of the competing claims of Shumard and UMB. The sum of the Disputed Proceeds was sufficient to protect Shumard in the repayment of its loan to OVU in the event that Shumard's security interest prevailed over UMB's security interest.

According to the Stipulation, upon PPLP's payment of the PPLP Note to the receiver, Shumard, UMB, and the receiver all agreed to waive, discharge, and release their respective claims against PPLP, the PPLP Note, the PPLP Deed of Trust, and all collateral documents. Shumard specifically agreed to execute a release of the PPLP Deed of Trust. Notably, the Stipulation states:

> The Creditor Parties reach no agreement at this time as to their respective and competing rights, claims or liens they are asserting related to the Note, the Property, or the Second Deed of Trust, except the Creditor Parties Agree that any such rights, liens, claims or interests are transferred and shall attach to the Disputed Proceeds in the same order, priority and validity as such rights, liens, claims and interests had with respect to the Note, the Property or the Second Deed of Trust immediately before Borrower's payment of the Note Proceeds to the Receiver. The creditor Parties reserve all rights related to such rights, liens, claims or interests with respect to the Disputed Proceeds.

> ***

> Upon Borrower's payment of the Note Proceeds to the Receiver in accordance with the Payoff Letter, the Receiver and the Creditor Parties and their officers, directors, employees, affiliates, agents, professionals, successors and assigns (the "Releasing Parties") completely, unconditionally and irrevocably waive, discharge and forever release, to the fullest extent permitted by law, the Borrower Parties and their officers, directors, employees, affiliates, agents, professionals, successors[,] and assigns (the "Released Borrower Parties") from any and all claims or causes of action whatsoever that the Releasing Parties now have or hereafter may have, of whatsoever nature and kind, whether known or not now known, contingent or liquidated, existing on or before the date of this Stipulation, that relate to, arise out of or otherwise are in connection with the Note, the Second Deed of Trust, the Property, the Repurchase Agreement, the Master Indenture and Bond Documents, the Shumard Documents, or any other related documents or transactions; provided, however, that the Releasing Parties are not releasing any claims related to the enforcement of this Stipulation.

On July 6, 2022, UMB filed its motion in circuit court, requesting an order determining lien priority. Shumard filed a response and both parties filed briefs in support of their positions. After considering the parties' briefs and documentation of record, the court entered the order now on appeal.

In its order, the circuit court found that UMB and Shumard each have valid security interests against the PPLP Note, and that the UCC controlled the issue. Relevantly, the court's order found: (1) The UMB/Master Trustee Lien was first perfected by a UCC-1 filed in 2007 and perfected a second time by a UCC-1 filing in 2019; (2) OVU is indebted to UMB/Master Trustee in excess of $16 million; (3) OVU granted Shumard a security interest in the PPLP Note on April 22, 2021, and Shumard perfected that security interest through a UCC-1 filed in 2021; (4) OVU is indebted to Shumard in excess of $530,000; (5) the collateral available to satisfy OVU's creditors is less than $10 million; and (6) the bankruptcy court's March 4, 2022, order permitted the Master Trustee to pursue its rights and remedies with respect to certain OVU property, which included its interest in the PPLP Note. The circuit court further noted that the Disputed Proceeds are payment proceeds from the PPLP Note, the note was an obligation of PPLP to OVU, and to secure the note, PPLP executed a Deed of Trust granting an interest in the real property to OVU.

Thereafter, the circuit court determined that OVU assigned the PPLP Note and Deed of Trust to Shumard with PPLP's consent. However, it was further determined that PPLP did not agree to pay or incur a separate or additional obligation to Shumard, PPLP did not agree that the Deed of Trust secured OVU's obligation to Shumard, and the PPLP Note has been paid in full to the receiver, which satisfies PPLP's obligation to OVU.

Ultimately, the circuit court concluded that UMB/Master Trustee's UCC-1 financing statement was filed first in time; therefore, UMB held the superior lien and was entitled to the $590,000. The circuit court made several findings in support of its ruling. Particularly, the circuit court found that the PPLP Note was an *instrument* as defined by the UCC and noted that OVU's assignment of the PPLP Note and Deed of Trust to Shumard was not an absolute assignment, but rather, an assignment to create a collateral security interest, which remained subject to the prior perfected security interest of the Master Trustee. Further, the PPLP Deed of Trust only secured PPLP's obligation to pay, and that under its terms and the language of West Virginia Code § 38-12-1(a) (1987),[4] the Deed of Trust had to be released after the PPLP Note proceeds were paid to the receiver. The court also determined that the Master Indenture granted the Master Trustee a security interest in all of OVU's gross

---

[4] This statute states:

Every person entitled to the benefit of any lien on any estate, real or personal, or to the money secured thereby, whether the lien was created by conveyance, judgment, decree, lis pendens, notice of attachment, deed of trust, contract or otherwise, shall be required to furnish and execute an apt and proper written release thereof free of charge to the debtor whose obligation secured by such lien has been fully paid and satisfied, if the lien is of record in the proper county. Such release shall be executed and furnished to the debtor within thirty days after the debt has been satisfied.

receipts, which included the Disputed Proceeds from the PPLP Note. *See* W. Va. Code § 46-9-315(a)(2) (2000) ("A security interest attaches to any identifiable proceeds of collateral.").

Next, the circuit court addressed the issue of priority and noted that pursuant to West Virginia Code § 46-9-322(a)(1) (2000), "[c]onflicting perfected security interests . . . rank according to priority in time of filing or perfection. Priority dates from the earlier of the time a filing covering the collateral is first made[.]" On that issue, the court observed that the Master Trustee's 2007 UCC-1 was filed in connection with a public finance transaction and remained effective pursuant to West Virginia Code § 46-9-515(b) (2014) (stating that "an initial financing statement filed in connection with a public-finance transaction . . . is effective for a period of forty years after the date of filing[.]"),[5] and that the Master Trustee's 2019 UCC-1 remained effective pursuant to West Virginia Code § 46-9-515(a) ("[e]xcept as otherwise provided . . . a filed financing statement is effective for a period of five years after the date of filing."). The circuit court found that both of the Master Trustee's filings occurred prior to Shumard's filing of its UCC-1 in 2021, and as a result, the Master Trustee Lien has priority over the Shumard Lien. This appeal followed.

In the present appeal, we apply the following standard of review:

> In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. Pt. 2, *Walker v. W. Va. Ethics Comm'n,* 201 W. Va. 108, 492 S.E.2d 167 (1997).

On appeal, Shumard raises four assignments of error to challenge the circuit court's order.[6] In its first assignment of error, Shumard asserts that that the court erred in finding that the PPLP Note was an *instrument* under the UCC. Regarding this issue, the applicable definition is found at West Virginia Code § 46-9-102(a)(47) (2013) and states:

---

[5] Although West Virginia Code § 46-9-515 (2000) was the operative statute in effect at the time the 2007 UCC-1 was filed, we cite to the current version of the statute because the statutory language for subsection (b) remains the same.

[6] In its reply brief, Shumard stated that it was withdrawing its second assignment of error. Also, on December 19, 2023, Shumard filed a motion seeking leave of the Court to withdraw its sixth assignment of error. The Court granted the motion by order entered on January 26, 2024.

"Instrument" means a negotiable instrument or any other writing that evidences a right to the payment of a monetary obligation, is not itself a security agreement or lease, and is of a type that in ordinary course of business is transferred by delivery with any necessary indorsement or assignment. The term does not include: (i) Investment property; (ii) letters of credit; or (iii) writings that evidence a right to payment arising out of the use of a credit or charge card or information contained on or for use with the card.

Under this statute, the parties dispute whether the PPLP Note qualifies as an *instrument* under the "any other writing" portion of the statute.[7] Shumard avers that the PPLP Note does not qualify as an instrument because it is not "of a type that in ordinary course of business is transferred by delivery with any necessary indorsement or assignment." Shumard interprets this language as meaning a simple assignment or indorsement and argues that such an assignment or indorsement of the PPLP Note is not permitted by the note's terms, which state: "This Note may not be assigned collaterally or otherwise by the Holder to any person or entity without the consent of Maker." ("Anti-Assignment Clause"). Because the Anti-Assignment Clause requires mutual consent of the parties, Shumard contends that this requirement makes the PPLP Note extraordinary and, thus, outside the scope of the statutory definition. Conversely, UMB contends that the UCC broadly defines the term *instrument*, there is no limiting language within the statutory language to support Shumard's opinion that only simple assignments and indorsements satisfy the definition, and therefore, the PPLP Note falls within the statutory definition. We agree with UMB on this issue.

Here, Shumard cites no authority to support its position that only simple assignments and indorsements are permitted; similarly, no argument is made that the statute is ambiguous. Instead, Shumard's argument is based on its subjective interpretation of the statute. Looking at the statute's plain language, the Court finds no language to support Shumard's interpretation. Particularly relevant to our determination is the official comment for West Virginia Code § 46-9-102, which states at comment 5(c):

**"Instrument"; "Promissory Note."** The definition of "instrument" includes a negotiable instrument. As under former Section 9-105, it also includes any other right to payment of a monetary obligation that is evidenced by a writing

---

[7] In addition, Shumard avers that the PPLP Note cannot meet the definition because it does not qualify as a negotiable instrument. *See* W. Va. Code § 46-3-104(a) (1998) (defining the term *negotiable instrument*). However, UMB's brief does not directly address that portion of Shumard's argument; instead, UMB summarily avers that the statute does not limit its applicability to only "negotiable" instruments. Thus, we limit our discussion to the arguments regarding the "any other writing" language because it is the portion of the statute appropriately contested on appeal.

of a type that in ordinary course of business is transferred by delivery (and, if necessary, an indorsement or assignment). Except in the case of chattel paper, the fact that an instrument is secured by a security interest or encumbrance on property does not change the character of the instrument as such or convert the combination of the instrument and collateral into a separate classification of personal property. The definition makes clear that rights to payment arising out of credit-card transactions are not instruments. The definition of "promissory note" is new, necessitated by the inclusion of sales of promissory notes within the scope of Article 9. It explicitly excludes obligations arising out of "orders" to pay (e.g., checks) as opposed to "promises" to pay. See Section 3-104.

Pointedly, the statutory comment does not include a restriction on the nature of the indorsement or assignment used, but rather, it explains that neither an indorsement nor an assignment is always necessary for a writing to meet the definition. Therefore, Shumard's interpretation of the statute is untenable. Instead, the official comment supports UMB's contention that the definition is broadly inclusive. Accordingly, we find no error in the circuit court's determination that the PPLP Note is an instrument under the UCC.

In a parallel argument, Shumard also contends that the circuit court's ruling is fatally flawed because the court found that the PPLP Note is an instrument, but its order supports that determination by incorrectly citing West Virginia Code § 46-9-102(a)(68), which defines a *promissory note*. In Shumard's opinion, this establishes that the court analyzed the PPLP Note under the wrong statute, resulting in reversible error. We decline to adopt Shumard's assertion. Instead, we find that the erroneous citation is nothing more than a clerical mistake, and because the court reached the correct result, we find the error to be harmless.

Next, Shumard assigns error to the circuit court's findings with respect to the agreed order entered by the bankruptcy court on March 4, 2022. Specifically, Shumard takes issue with the following finding by the circuit court regarding paragraph three of the bankruptcy court's order, which states: "The [b]ankruptcy [c]ourt specifically found that the PPLP Note was included in the Master Trustee's collateral." From this isolated language, Shumard contends that the circuit court erroneously found that the bankruptcy court's order determined the parties' rights regarding the PPLP Note, including the validity of the UMB/Master Trustee lien.

In framing Shumard's argument on appeal, we note that Shumard does not contend, and rightfully so, that the bankruptcy court lacked authority to grant the Master Trustee relief from the stay to pursue its legal remedies outside of the bankruptcy proceeding. Rather, Shumard focuses on the wording used by the circuit court to explain the meaning of paragraph three of the bankruptcy court's order and argues that the circuit court incorrectly interpreted the paragraph to mean that the bankruptcy court was making a final

determination regarding the validity of UMB's security interest in the PPLP Note. According to Shumard, this constitutes error for multiple reasons: first, the bankruptcy court order made no such finding; second, the law of the case doctrine does not apply; and third, it is not customary for bankruptcy courts to make final rulings in proceedings related to motions for relief from bankruptcy stays. The Court does not find Shumard's arguments compelling.

On this issue, Shumard's challenge views the circuit court's ruling in a vacuum and fails to consider the totality of the court's findings regarding the bankruptcy court's order. In that respect, the circuit court's order addresses the bankruptcy order by quoting, in part, the portion of the order granting the Master Trustee relief to "exercise its rights and remedies under applicable nonbankruptcy law with respect to . . . the personal property defined as the 'Campus Personal Property.'" This is followed by the circuit court's finding that paragraph three of the bankruptcy court's order clarified that the PPLP Note is part of the Master Trustee's "collateral," or stated another way, that the note is included as part of the Campus Personal Property that the Master Trustee was permitted to pursue outside of the bankruptcy case. Notably absent from Shumard's argument is any reference to paragraph three of the bankruptcy order or discussion as to how the language used by the circuit court distorts the intent of the bankruptcy court's ruling, let alone how it directly supports Shumard's interpretation. Rather, Shumard merely relies upon the subjective inferences it drew from the court's language as the foundation of its argument. This is insufficient to establish error on appeal.

At best, Shumard's argument on this issue can be pared down to a steadfast disagreement with the circuit court's view of the facts, coupled with an invitation for this Court to look at the record and reach a more favorable conclusion. We decline to do so. It is well established that on appeal, "an appellate court does not reweigh the evidence." *State v. Thompson*, 220 W. Va. 246, 254, 647 S.E.2d 526, 534 (2007) (citation modified); *Coles v. Century Aluminum of W. Va.*, No. 23-ICA-81, 2023 WL 7202966, at *2 (W. Va. Ct. App. Nov. 1, 2023) (memorandum decision) (noting that an appellate court will not reweigh the evidence presented below on appeal). As such, Shumard is not entitled to relief on this issue.[8]

Shumard's fourth assignment of error alleges the circuit court erred by finding that UMB could enforce the PPLP Note as Master Trustee when UMB did not possess the original. In other words, Shumard contends that it holds the only valid lien against the PPLP Note. However, this argument fails.

---

[8] Moreover, the circuit court independently reviewed the underlying facts and determined that UMB had a valid lien which was superior to Shumard's lien. Therefore, any error in the circuit court's description of the bankruptcy court's order was harmless, as it was not the basis of any of the circuit court's rulings.

Here, Shumard's argument simply rests on its citation to a few UCC statutory provisions followed by the summary conclusion that the statutes apply and Shumard is entitled to relief. Strikingly absent from Shumard's argument is any application of statutes to specific facts of this case. Moreover, Shumard's argument on this issue is further discredited by its complete lack of citation to the record below. To that end, Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure provides that "[t]he argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal" and that "[t]he Intermediate Court . . . may disregard errors that are not adequately supported by specific references to the record on appeal." Significantly, Shumard fails to cite where the allegedly invalid finding is contained in the circuit court's order. Also, Shumard fails to establish where in the record this argument was made below and, thus, preserved for appeal. Thus, Shumard's argument is merely an assertion, which does not preserve this claim on appeal. *See State v. Kaufman*, 227 W. Va. 537, 555 n.39, 711 S.E.2d 607, 625 n.39 (2011). As such, we conclude that Shumard is not entitled to relief on this issue.

In its final assignment of error, Shumard avers that the circuit court erred because it failed to find that based upon the terms of the Stipulation, the PPLP Deed of Trust gave Shumard the only valid lien against the PPLP Note. Here, Shumard's argument centers on certain conclusions of law in the circuit court's order. First, Shumard takes aim at the circuit court's determination that the "PPLP Deed of Trust secured only the PPLP Obligation and pursuant to its terms and [West Virginia] Code § 38-12-1(a), the Deed of Trust had to be released when the [Disputed] Proceeds were paid to the Receiver." Shumard asserts that these determinations are erroneous because the Stipulation preserved the parties' rights as they existed immediately prior to PPLP's payment in satisfaction of the PPLP Note to the receiver, and even though Shumard released the deed of trust after PPLP's payment in accordance with the terms of the Stipulation, Shumard's pre-payment rights remained intact.

Second, Shumard takes issue with the circuit court's conclusion that "[t]here is no remaining interest in real estate, and the West Virginia recording act is not applicable here." The root of Shumard's argument is that this matter is not governed by the UCC, but rather, by real property law. To that end, Shumard contends that the circuit court failed to apply real property law to the case and find that Shumard held the exclusive right to enforce the PPLP Deed of Trust immediately prior to PPLP's satisfaction of the PPLP Note. Shumard believes its theory is supported because a deed of trust has been defined as "a deed that conveys title to real property in trust as security until the grantor repays the loan." Syl. Pt. 7, in part, *Arnold v. Palmer*, 224 W. Va. 495, 686 S.E.2d 725 (2009). Thus, the PPLP Deed of Trust is an assignment that is subject to our state's recording act both as a contract and deed pursuant to West Virginia Code §§ 40-1-8 and -9, both of which are required to be recorded by the county clerk. *See* W. Va. Code § 38-12-9 (1882). Shumard maintains that these statutes control the issue, and because Shumard was the only party with a recorded

assignment on the PPLP Deed of Trust, it is the only party with a lien against PPLP's real property. Therefore, the circuit court's ruling must be reversed and Shumard declared the only party with a right to the Disputed Proceeds. We are not persuaded by any of Shumard's contentions under this assignment of error.

Shumard's reliance upon the PPLP Deed of Trust is misplaced. As exhibited by Shumard's own argument, all that the PPLP Deed of Trust did was act as security for repayment of the loan. *See Arnold* at 497, 668 S.E.2d at 727, syl. pt. 7, in part. In this case, the deed of trust secured PPLP's repayment of its obligation to OVU, which was the $750,000 represented by the PPLP Note. The obligation was satisfied by PPLP's payment of the Disputed Proceeds to the receiver; thereafter, in accordance with the Stipulation, Shumard released the deed of trust. However, Shumard's release has no bearing on this case because the Stipulation clearly states that the parties' "rights, liens, claims or interests" to the PPLP Note prior to repayment remained intact and were attached to the Disputed Proceeds. Thus, contrary to Shumard's position, disposition of this issue squarely rests on the determination of which party's UCC-1 has priority under Article 9 of the UCC.

West Virginia Code § 46-9-109(b) (2005) evidences this, stating: "The application of this article to a security interest in a secured obligation is not affected by the fact that the obligation is itself secured by a transaction or interest to which this article does not apply." West Virginia Code § 46-9-203(g) (2006) also states: "The attachment of a security interest in a right to payment or performance secured by a security interest or other lien on personal or real property is also attachment of a security interest in the security interest, mortgage or other lien." Moreover, as clarified by the official comment for West Virginia Code § 46-9-203(g):

> 9. **Collateral Follows Right to Payment or Performance.** Subsection (g) codifies the common-law rule that a transfer of an obligation secured by a security interest or other lien on personal or real property also transfers the security interest or lien. *See* Restatement (3d), Property (Mortgages) § 5.4(a) (1997). See also Section 9-308(e) (analogous rule for perfection).

Article 9 also states that "a security interest in proceeds is a perfected security interest if the security interest in the original collateral was perfected." W. Va. Code § 46-9-315(c) (citation modified). As detailed by the circuit court's order, UMB's perfected interest stems from the Master Trustee Lien, and Shumard's perfected interest was created by the Shumard Lien. Thus, even without the Stipulation, a priority determination under West Virginia Code § 46-9-322(a)(1) was inevitable for the circuit court in this case due to the competing security interests. Turning to the circuit court's priority determination, the Court finds no error in the circuit court's application of West Virginia Code § 46-9-322(a)(1) to resolve the parties' competing security interests. The Court concludes that the record supports the circuit court's ultimate determination that UMB holds the superior lien and is entitled to the Disputed Proceeds because its UCC-1 was perfected prior to

Shumard's UCC-1. We also observe that Shumard offered no argument on appeal, even as an alternative to its position that the UCC does not apply to this case, to contest the circuit court's reconciliation of the competing security interests under the statute.[9] As such, we find no error and affirm the circuit court's June 5, 2023, Order Determining Lien Priority.

Accordingly, we affirm.

Affirmed.

**ISSUED:** February 27, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White

---

[9] We observe that Shumard's argument regarding the inapplicability of the UCC to this case appears to be internally inconsistent with the majority of Shumard's arguments on appeal, which directly argue for or against the application of certain UCC provisions to support Shumard's theory that the circuit court committed reversible error. Nevertheless, Shumard's theory shift has no bearing on our decision herein.

13